Good morning. Good morning. Jeff Jones for the appellant Thurman Spencer. First of all I wanted to say I intend to address claim one to focus on claim one in the opening brief in my argument but of course I'm prepared to answer questions regarding any of the claims that are certified in this case. With regard to claim one the appellant is convicted of two counts of attempted murder based on arson events that occurred in 1998 and in 2000. The conviction in 2000 for the 2000 fire bombing was supported by some circumstantial evidence. The 1998 offense however was the prosecution's case there was based entirely, by my reading, entirely based on the similarity to the 2000 event and as well as the prior act evidence based on the 1998 event. With regard to that fire in 1998 the defense produced evidence that another individual substantial evidence another individual may have started that fire. It produced evidence that a woman named Tracey Wallace had been involved in the fire and that Tracey Wallace had threatened a member of that household that was fire bombed with multiple threats of physical violence the very day before the fire occurred. The day after the fire she called up this person, Rene Martin, how does it feel to have a house full of fire? The problem in this case though is that the trial judge conducted an extensive hearing, even extended the long arm of the court to try to track down some of these people, Wallace and Martin and everything else and after looking at this very, very carefully, I think the trial judge did look at it carefully, concluded under section 352 that it simply was too attenuated, it was going to cause confusion and so ruled it out. And isn't that, hasn't that been acknowledged by all the Supreme Court cases as a sufficient basis to knock out this, I mean the judge didn't say exculpatory evidence with respect to somebody else who might have done it, I don't want to hear that. The judge did exactly the opposite, heard it and ruled under 352 that it just doesn't going to cut it. Why isn't that enough under the Supreme Court precedent? The courts even talk about that. First of all, Tracey Wallace, there's no problem finding her, just to address the point you made at the beginning of what you said. There wasn't a problem finding Tracey Wallace, but they cut it off at that point. She was never brought in. Since the judge had determined that there was no need to even bring her in. Yes, indeed, indeed, that's true, that's true. Right. Well, regarding Holmes v. South Carolina and its antecedents, in that case the court did address a different type of rule. And that rule, as you note, it's the opposite kind from 352, and the court approved rules like 352. Here it's the application of evidence code 352 that's the problem, and it's an unreasonable application of Holmes. Because the problem Holmes had with the rule in South Carolina was that it excluded evidence that had a strong logical connection to central issues in the case. It excluded substantial exculpatory evidence. In this case, the court didn't do that by applying a rule like the South Carolina Supreme Court did, but it did it by unreasonably applying evidence code 352. And it's not a State law challenge. It goes to the right to prevent a defense that Mr. Spencer had the right to prevent. It's a due process challenge. Indeed. The right to do process and Sixth Amendment, the right to present a defense as stated in Holmes and its antecedents. That's a tough case to make on habeas. Most cases are, Your Honor. Right. I mean, it's a tough standard to make. It's a tough standard to make. Didn't the Court say, well, there may have been an attenuated motive, but there was no opportunity? Yes. The Court, the California Court of Appeal ruled that all that was shown was opportunity or rather all that was shown was motive. The Tracy Wallace was, had the motive but no opportunity. I think that is a misreading, entirely an unreasonable reading of the record in this case. Well, what's the evidence of any opportunity? Well, the opportunity is she – I think a reasonable jury could infer from her statement that how does it feel to have your house full of smoke and the threat she made that she was the one who committed the fire. That's not opportunity. That's not evidence of opportunity. I'd say there was no – the California Court of Appeal relied on evidence that she couldn't have done it, that she didn't know the address. She didn't know the address. But I think that was a mis – that was a cherry-picking and an unreasonable reading of the record. Well, but there is evidence that she didn't know of the address, and there was none that she did. I think the evidence that she didn't isn't – I don't – I believe the evidence that she didn't isn't – is what was misunderstood by the California Supreme Court. But you're not suggesting, are you, that the California courts couldn't rely on that? They could – no, they could rely on it. If they could, that's the end of your case. I don't think so, Your Honor, for this reason. If you take – given the constitutional right to present a defense, now, if you take evidence like the testimony of Renee Martin regarding what Tracy Wallace said, if it could go either way, two reasonable interpretations, now, this is the ultimate standard under AEDPA's reasonableness. But with regard to the right to present a defense, if you have a fact like what Tracy Wallace said, and a reasonable jury could go either way, I think that the reasonableness under AEDPA is – you know, that applies to the entire question, was the – did this evidence have a strong logical connection to the – to the issues? You know, was it – to the central issue in the case, was it exculpatory? And if you have evidence like this, that a reasonable jury could go either way on it, well, that clearly is a question for the jury, I think, under – even under the constitutional standard and the standard of review in AEDPA, in this case. Ginsburg-McCarthy That's not the standard under AEDPA, if a reasonable juror could go either way. No, that's not our standard. Fisher No, I didn't mean – no, I didn't mean that. But I think the standard under AEDPA, of course, is that it has to be objectively unreasonable. Ginsburg-McCarthy Right. Fisher But I'm saying it's the overall – it's the overall conclusion that has to be objectively unreasonable by the California court of appeal. The overall – the application of Holmes v. South Carolina, not every link in the chain. And my point is that if, in applying Holmes v. South Carolina, you have potentially exculpatory evidence, the defense wants to show a third party did this, and the defendant presents evidence that a reasonable jury could decide either way, that becomes an unreasonable application of Holmes to say the jury can't hear that  Ginsburg-McCarthy Basically, I think you're asking us to go back and second-guess the trial judge's weighing of the evidence. And on habeas, we can't do that. We have to give deference to the findings that were made by the State judge. How do you get around that – our obligation in that regard? Fisher Well, I think it's not a question of over-second-guessing a finding, but, I mean, the evidence is there on the transcript. We have what Renee Martin said. And I think that the court of appeals interpretation of that evidence wasn't of saying that this could have shown that she didn't know the address. I'm not saying that in and of itself is unreasonable. I'm saying a reasonable jury could have come out either way on it. Sotomayor Doesn't help you, though. Fisher Well, it's the same with the – if we look at Holmes v. South Carolina, that evidence, it was – if it's found credible, it could exonerate the defendant. It wasn't clearly an exoneration. The point for the Supreme Court in that case was the jury has to hear it, because it's potentially exculpatory. It comes down to a credibility issue. And I think that's what we have here. We have evidence that – Sotomayor The problem is that that evidence was never vetted in the State court. Fisher Not in – no, it wasn't entirely vetted. But I think – Sotomayor Right. Fisher Nor was it vetted here beyond the hearing that Judge Trott referred to. Sotomayor That's vetting it, though. Fisher Well, to an extent, certainly. They heard Renee Martin's testimony. Sotomayor Your complaint is that it wasn't delved into as deeply as you thought the court should have gone. That's your complaint. But it was vetted by the court, and the court decided after hearing so much of the evidence that it didn't need to hear any more evidence to make the determination that this was too attenuated and that it would take the jury away from its main task of looking at the evidence that was pertinent to this case. So I don't understand how that becomes a constitutional violation. Fisher Well, I think it becomes one because Mr. Spencer had the right – in his right to present a defense, he had the constitutional right to, under Holmes v. South Carolina and the cases it relies on, to present evidence that – that tends to show that a third party did it. It has a strong – Roberts Not all evidence. Fisher A strong logical connection to a central issue in the case, I believe, is the language in Holmes. Roberts Yeah, well, Holmes – you've read our Cujo case, I'm certain, by now. Fisher Yes, sir. Roberts And they even quote Holmes, "...well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." That sounds like 52 to me, 352. Fisher Indeed. Indeed. I don't disagree with that, that under Holmes, the rule – the rule that the court had a problem with in Holmes is essentially – the court in Holmes doesn't have a problem with evidence code 352. That's the type of rule that they approve. Fisher Right. It's the – but I think the problem that it had with the rule of the South Carolina Supreme Court applied was that it excluded – that it excluded evidence that was potentially exculpatory that had a strong logical connection to a central issue. Roberts So your case really boils down to thinking that the trial judge here made a mistake that was completely unreasonable under 352. Fisher Yes. Yes, Your Honor. Roberts Okay. Fisher Absolutely. That's – Ginsburg Did you want to save time for rebuttal? I think we understand your argument. Fisher Yes, Your Honor. I would. Ginsburg Let's hear from the State. All right. Thank you. Justice Breyer, you have five minutes. Justice Breyer Good morning. May it please the Court. Justin Riley, on behalf of the Warden. The appellate is basically arguing that the State court's application of Section 352 of the evidence code was so unreasonable that it somehow violated due process. This Court can't decide that on federal habeas review. This Court can't apply a State statute in this manner differently than the State – differently than the State court did. Can't disagree with the State court's application of its own rules. Ginsburg Well, we can if the application was so outrageous that it deprived the defendant of the opportunity to present a defense. And that would have to be in a specific situation, such as in Holmes, when it was a complete denial of a defense because of an unconstitutional application, not just, we disagree with the way they applied Section 352. Kennedy Are you saying we can never look at the way a judge has applied 352? Riley No, 352 has to violate, under federal habeas review, the application of Section 352 has to violate a clearly established rule established by the Supreme Court. For instance, in Holmes v. South Carolina, the rule was very similar to California evidence code Section 352, but the South Carolina courts were applying it in such a way as it became unconstitutional. And by that I mean they were taking the evidence and basically doing the jury's job. They were weighing the third-party exculpatory evidence, the proposed evidence, against the prosecution's evidence. Basically, they were holding a mini-trial. Here, on the other hand, the State court was just doing a run-of-the-mill application of Section 352 in which they were doing a relevance versus probative value, relevance, probative value weighing of the evidence versus undue prejudice. And that's what the appellant is disagreeing with here. It's just an ordinary application of the rule. Second, the judge had at least three separate hearings on this evidence, as Your Honors recognized, and the State court has offered to find witnesses for the defendant, and still there wasn't enough evidence. And then there was a harmlessness analysis done by the State court, which appellants still can't overcome. I'd love to answer any other questions, but I'm prepared to submit it on the briefing. It appears there are no other questions. Thank you, counsel. Thank you. Rebuttal. Your Honors, briefly, regarding the argument that I'm challenging, I'm intimidatingly challenging the State's application of Evidence 352, in any case where you're talking about the right to present a defense in California, the State's always going to be applying that rule. They can apply it incorrectly, and that's not the basis for a constitutional challenge, that there's a due process right to have that law correctly applied. It's simply State rules of evidence don't preempt constitutional principles, whether it's the right to confrontation or the right to present a defense. I'm not challenging Evidence 352 at all. I'm challenging the State court's evidentiary ruling because it implicates, because it violates my client's right to present a defense. And to that point, the lack of opportunity, the California court of appeal reasoned that Tracy Wallace didn't have opportunity because, and she called right after the fire, and she knew about the fire, and she made a statement that I believe a reasonable jury could interpret as taking credit for the fire, for gloating about what she did. And the court of appeal reasoned, well, she saw this because the fire was on TV, and Renee Martin, her intended target, was on TV. Now, did Wallace testify before this judge? No. No. Wallace did not. Martin did. But the investigator for the defendant presented a report from Wallace. The defense attorney told the judge what his investigator had said. Right. Did the defense attorney ask for that person to be subpoenaed into court to testify in front of the judge? I didn't see anything like that. Nor did I, Your Honor. They could have. So the defense attorney settled on the report. Well, I think the of course the defense was seeking to have her, to have Ms. Wallace subpoenaed for trial. I think the trial court's ruling, it didn't go beyond that. I think the defense didn't have an opportunity to do that, because they got as far as they did, and the trial court made its ruling. Well, but I didn't see any intervention by the defense attorney saying we need to bring this person in. They seemed to, the defense attorney seemed to be satisfied with the investigator's report. And the report pretty much got rid of any opportunity. Well, the report, no. I think the report actually didn't do that. I think the report, the report, for instance, the California Court of Appeal, as I was saying before, she noted that Martin could have, Martin, Wallace could have seen Martin on TV. That's how she knew about the fire, saw it on TV, and made the, and then made the call just to, you know, give her a hard time about it. But the defense investigator reported that Tracey Wallace denied having seen about anything about the fire on TV, said she didn't know about the fire. And that undercut, that, that, that, that's a conflict in the record that undercuts the California sanctuary. And said she didn't know where Martin lived until she found out later. I don't think, I think, I think she, actually I think she simply denied, I think she simply denied knowing, knowing what Martin looks like or even being aware, well, she denied knowing what she looks like. I don't, I don't recall the address issue, whether she knew the address being, being raised at all. I'm sure she would not have admitted knowing the address if she'd been asked. But her, her testimony is contrary to Martin's in a lot of ways. And that's, that's what I mean by, the jury could take Martin's comments and hearing Wallace's denials, that's, that's rather incriminating to to Tracey Wallace. Thank you, counsel. Thank you to both counsel for your arguments in this case. History's argument is submitted for decision by the court.
judges: Cudahy, Trott, Rawlinson